Judge Hitchcock;
delivered the opinion of the court:
The questions presented for decision in this case have heretofore been submitted to the court in a variety of shapes, *in several actions which have been px-osocuted, growing out of the settlement of the estate of Israel Ludlow. Heretofore it has been unnecessary to decide them, and the court have carefully avoided forming a definite opinion upon them, until necessity should require it. Such necessity now exists, and we are highly gx'atified at the more than ordinary efforts which have been made, by the eminent counsel in the case, to aid and assist us in coming to a corx’oct conclusion.
In the case of the Heirs of Ludlow v. Johnson, 3 Ohio, 353, this court decided, together with other principlés arising in the case, that the law of 1795, “for the settlement of intestate estates,” was the first law of the territory or state giving authority to administrators to dispose of'the real estate of their intestates, and the only one giving this authority, previous to June, 1808; and that the law *455 was repealed and ceased to have effect from and after the first day of June, 1805.
The case was decided after mature deliberation, and after every reflection had been bestowed upon it, which the importance of the subject and the value of the property in controversy demanded. The decision was concurred in by all the members of the court then present. Since that decision the same questions have been presented in a variety of aspects, and the principles of that decision-have been considered as the settled law of the state. All the-mem-' bers of the court, as now instituted, are satisfied with those principles. So far, then, as any point is made in this case which was decided in the case referred to, it will not be particularly examined,, but considered as settled by the authority of that case.
Three questions not heretofore directly decided are now presented to the court for consideration :
1. Is the order of May, 1804, under which the land in controversy was sold, of such a character that the purchaser can protect himself under it?
2. The order for sale having been made in 1804, and before the-law of 1795 was repealed, what effect will that rep>eal have upon those sales which were made subsequent to the repeal?
3. What effect can be given to the saving clause in the *general repealing law of February 22, 1805, so far as respects cases like the one now before the court ?
By the counsel for the plaintiffs, it is contended that the order of May, 1804, is void, and therefore that the defendant can not protect himself under it. The subject was hinted at in the case of Ludlow’s Lessee v. Johnson, but the argument was not pressed. In the"decision of that case the court considered the order as sufficient to protect a purchaser, without examining very specifically its-terms, or the arguments which might be urged against it.
The law of 1795, Ohio L. L. 331, under which this order was-made, provides that “ if any person or persons should die intestate, being owners of lands or tenements, within this territory, at the time of their death, and leave lawful issue to survive them, but not a sufficient personal estate to pay their just debts and maintain their children; in such case it should be lawful for the administrator or administrators of such deceased, to sell and convey such part or parts of said lands or tenements, for defraying their just debts, maintenance of their children, and for putting them apprentices,, *456 and teaching them to read and write, and for improvement of the residue of the estate, if there be any, to their advantage, as the orphans’ court of the county where such estate lies, shall think fit to allow, order, and direct, from time to time.”
In the next section it is provided that no lands contained in marriage settlement shall be disposed of contrary to the form and effect of the settlement. That no sale shall be allowed before the “administrators requesting the same do exhibit one or more true and perfect inventories and conscionable appraisement of all the intestate’s personal estate whatever; as also a true and just account, upon his or her solemn oath or affirmation, of all the intestate’s debts which shall be then come to his or her knowledge, and if thereupon it shall appear to the court that the intestate’s personal estate will not be sufficient to pay the debts and maintain the children, until the eldest attaius the age of twenty-one years, or to put them out to be apprentices, and teach them to read and write, then, and in every such case, and not otherwise, the court shall allow such administrator to make public sale,” etc.
*This is the law which first, in this state or territory, authorized the administrator to interfere with the real estate of the intestate. It will be seen that the legislative authority were extremely careful in specifying the circumstances under which this interference should be had, as well as in prescribing the coui’se to be pursued before the orphans’ court had the power or jurisdiction to “ allow ” a sale. The object does not seem to have boon so much to provide for the payment of debts as to provide for the maintenance and education of minor children. Unless the decedent had “issue,” according to section 7, the section above first recited, power is not given to the administrator to dispose of real estate. And, according to section 8, this power is restricted unless the children are all under twenty-one years of age. Giving this law a natural construction, let a person die ever so much in debt, and leaving ever so much real estate, but leaving no'issue, that real estate could not, through the agency of the orphans’ court, be appropriated to the payment of his debts.
• At the present day such a statute would not,-probably, be very acceptable to the people of Ohio; but we must take it as it was, not as we nowtsuppose it ought to be. This statute was adopted from Pennsylvania, and I believe the courts of that state have construed it as extending to all intestate estate, as well where there *457 was not as where there was issue. Justice might require such, construction, but the/words of the act would scarcely seem to warrant it.
Before the court can act, the administrator is bound to present two inventories of the personal property and “ conscionable appraisement.” He is also bound to present an account of debts due from the intestate, as far as the same may have come to his knowledge, verified by his own oath or affirmation. It is objected, that the order in this case does not show these facts. Neither does it show that there were any minor children or other issue left by the intestate. Neither is there any other evidence of record to show these facts. Nor anything from which it can be inferred that the personal property was not sufficient to pay all debts. The order is further objected to on the ground of vagueness and uncertainty.
*It is in these words: “ The administrators of Israel Ludlow, deceased, exhibit an account current, and pray the court to issue an order for the sale of real property, etc. John Ludlow and James Eindlay sworn in court. The court order so much of the real property sold as will meet the said demands, except the farm and improved lands near Cincinnati, together with the houses and lots in Cincinnati.” This order is certainly very vague and indefinite, and it is difficult to get over the objections raised by the plaintiff’s counsel. It ought, unquestionably, to have appeared somewhere upon the record, that these circumstances concurred, without which the court has no power to “ allow ” the administrator to sell. These circumstances probably existed and wore made known to the court. It would have been far better, however, that •they should have appeared of record, either in the form of an application to the court as the foundation of the order, or in the order itself. Were this a proceeding of the present day we should hesitate to pronounce it irregular and void, as being too indefinite and loose to protect an individual who had purchased in pursuance of it. But it must be recollected that these proceedings were had at a very early period of our judicial history; and experience teaches us that we must view these early proceedings with a more favorable eye than those of more modern date. Such has been the course heretofore adopted (3 Ohio, 272), and we do not feel inclined to depart from it.
Nor has it escaped the notice of the court, that the probate busi *458 ness, in some parts of the state, and particularly in the county of Hamilton, was at an early period conducted in a very loose manner. Pew, if any, of the orders for the sale of real estate were regular, perhaps not so much so as in the present case. Yet lands were sold in many instances by administrators. These lands have passed into the hands of subsequent purchasers. They have improved in their condition and risen in value. It would be impossible, therefore, even to conjecture the immense injury which would be done by holding this order invalid. Although such has been the irregular manner of transacting the business, still it is to be presumed that little, if any, injustice has been *done. Lands of intestates have been sold, but the avails have been applied to the payment of their debts. Prom these considerations, and we are frank to say that it is from these consideration alone, we are inclined to hold this order valid. It was made by a court having, under certain circumstances, jurisdiction of the subject matter, and we will presume that, those circumstances existed and were made known before the order was entered of record.
I come next to consider what effect the repeal of the law of 1795-would have upon sales made after that repeal, but in pursuance of the order of 1804.
In order to arrive at a certain conclusion upon this question, it is necessary to inquire into the character of an order of this-description. It is strenuously argued by the defendant’s counsel that it assimilates itself to a judgment or decree of a court; and, going upon this hypothesis, that the repeal of a law could not-affect it, unless clearly so expressed by the repealing law itself. If the premises are true, this consequence will follow.
So far as the interests of purchasers are concerned, this court-have ever considered these orders of equal validity with judgments. 3 Ohio, 257, 561, 562; 4 Ohio, 130, 131. As a purchaser from the sheriff need not look behind the judgmént, neither is it necessary for the purchaser at the administrator sale to look behind the order of sale. If the court have jurisdiction of the subject matter,, this is sufficient.
But does the analogy hold beyond this? It is true, in the case of Goforth’s Lessee v. Longworth, 4 Ohio, 131, the court say, in speaking of such an order, “this act to be performed by the court is essentially of a judicial character; a judgment is tojbe made up and pronounced; and this judgment is the foundation of the ad *459 ministrator’s or executor’s power to sell. To 'see the applicability of this language, it is necessary to look at the facts of the case then under consideration. The defendant relied upon a title derived from an administrator’s sale, but produced no order of sale. The question to be determined was, whether without such order the sale could be sustained. By the court it was held that it could not. And it will be found, by an examination *of all the statutes upon the subject, that an administrator could at no time sell without the approbation of the court. The law makes-provision for the sale, but leaves it with the court to ascertain whether there is such a combination of circumstances as will under that law justify a sale. Without such order the sale would be void. The order, then, is essentially necessary; it is the-foundation of the power to sell. But without a law authorizing the sale the order itself would be void. It would lay no ‘ foundation ’ that would justify the execution of such power. Every order of court to extend may be considered as a judgment. But it is in the character of a final judgment that an order of sale must be considered, or the consequence will not follow which is contended for by the defendant’s counsel.”
The object of a judgment is to settle conflicting rights between parties — to render certain that which before was uncertain. And whenever a party recovers a judgment, a right is vested in him to receive that which he has recovered. This right can not be taken away by implication, and it may well bo doubted whether' it would be in the power of the legislature to divest him of it.
Now what right is settled by an order to sell land ? What does the administrator gain by it? It may enable him the more-readily to settle the debts of the intestate. But to him it is immaterial whether those debts are paid by property passing through his hands, or by property which passes to the heir, and in his hands is charged with the payment of those debts. An administrator who acts in good faitn can never be charged beyond the amount of assets which came to his hands. And if the law will not permit him to dispose of the real estate, he has nothing more to do than to dispose of the personal and distribute the' avails among the creditors or heirs, as the case .may require. Neither do the creditors acquire any right in consequence of such an order. So long as the realty is subject to the payment of the-debts of a deceased person, they have a claim to have their debts- *460 ■satisfied out of that estate. But whether they shall obtain that satisfaction in one mode or another is a different matter. Further, in cases of this description, they are in no shape parties to the proceedings. It seems clear to me that this border can in no shape be assimilated to a judgment between litigant parties, except so far as a purchaser is concerned.
Counsel for the defendant seem to think that the power to -sell depends upon the order of court. Without the order, it is •true, the administrator can not sell. But the power itself is derived from a higher source, from the legislature itself. By his ■appointment the administrator is vested with an interest in the personalty, but he has no concern with the realty. At common law an administrator has no right to interfere with the latter.. "Tjhe statute, however, authorizes him to do it under certain circumstances. But it does not leave it in his discretion to determine whether those circumstances do or do not exist. This is to be determined by the probate court upon an examination of the facts. And it is only with the approbation of that court that this power intrusted to him, not by the order of the court, but by the law under which he acts, can be exercised. It can not but be noticed -with how much care the legislature. have, in all this business, guarded the estate of the intestate. They authorize the administrator to sell, but do not leave it to his discretion when a sale ■should take place. It can only be done when a certain state of 'facts exist, and when such is the.case it may be done, provided the court advise or direct. In this view of the case I can look • upon the order of sale as nothing more than record evidence of the existence of the necessary .state of facts to justify such a proceeding, and the assent on the .part of the court that the administrator should exercise a power previously vested in him. It calls that power which was before dormant into life and activity. It follows, then, that a repeal of the law is a revocation of the power. And after its revocation a sale made would be void, al-though during the existence of the statute an order for such sale had been made. In fact, the right to sell depends both upon the •existence of the law and of the order, and when either ceases to be in force the-right is gone. A repeal ofthe law would not have .an effect to rescind equivalent to the effect which the reversal of a judgment would have upon that judgment. And as after such ■reversal a sale made would convey nothing, so after the repeal of *461 the law would a sale made be void. While both *the law and the order are in force a good title can be made, but not after one is repealed or the other rescinded.
It remains to be considered whether such effect can be given to-the saving clause of the general repealing law of February 22,. 1805, as so far to continue the order of 1804 as to sustain the sale under which the defendant claims.
Section 1 of this act provides “that all the laws adopted or' passed by the governor and judges prior to the 1st day of September, in the year of our Lord 1799, and now in force in this state,, be and the same are hereby repealed.” Section 2 : “ That all laws- and resolutions passed by the territorial legislature prior to April 1, 1802, be and the same are hereby repealed, except,” etc. “ Provided, nevertheless, that nothing in this act contained shall be so' construed as to affect, in any manner, any suit or prosecution now-depending and undetermined, but the same shall be carried on to-final judgment and execution, agreeably to the provisions of any. of the said laws under which the suit or prosecution may have-been commenced and the practice of the courts.”
The determination of this case, so far as the present question is concerned, depends upon the meaning which shall be attached to the phrases, “ suit or prosecution.”
It is insisted by counsel that the provision before recited should, be attached and made applicable to all the acts by which territorial, laws were repealed during that session, whether repealed by their title or by this general repealing law. And considering that under the law of 1795 no other proceeding could be had in court, except to procure an order for the sale of land, they urge that such application must be considered in the nature of a suit and the order of a judgment within this saving clause.
To a certain extent this position may be correct. I incline to the opinion that it was the intention of the legislature that the effects of this provision should apply to the repeal of all those' laws when it was necessary for the furtherance of justice, or rather, where laws were repealed under which it might be supposed that a suit or prosecution could be pending; and that whether the law was repealed by its title or by *the general law. To consider it as applicable to the repeal of the statutes would be useless. Rut it does not follow, because such was the intention, that a new meaning shall be given to words, or that they shall be- *462 construed to mean anything different from their ordinary signification. Unless there was a necessity to save a suit or prosecution, this saving clause could not be considered as attaching to the repeal of the law of 1795. Prom the position of the defendant’s • counsel, then, no inference can bo made with respect to the meaning of the phrases “suit and prosecution.” At least no inference which can go to change their ordinary import.
I am led to the conclusion that it was the intention to apply this saving clause to the laws generally, by an examination of the session of 1804-5, and from the peculiar phraseology of this repealing law.
It will be found that the several statutes passed that session took effect at a subsequent period. Most of them in June. Some few of them earlier, and one, at least, as late as August. During the' session there was a general revision, and, as a general rule, when the legislature acted upon any subject, they repealed by their title such as were upon the same subject, and also all others coming within the purview of the statute which they were then enacting. It is said by the defendant’s counsel, that every territorial law then in force was repealed by its title, with the exception of the law of 1795, “for the settlement of intestate estates.” That this law was as effectually repealed, as if it had been named by its title, by the act of February 21, 1805 (3 Ohio L. 188), “defining the duties of administrators on wills and intestates’ estates,” •etc., I can have no doubt. Although this course was pursued, there was not attached to each clause a proviso saving suits and prosecutions. This was the case in but very few instances.
Now let us look at the language of the repealing law. This act, like most of the others, was to take effect on the first day of June. By its terms the legislature do not profess to repeal laws, for the repeal of which provision had not been before made. Their language is, “ all the laws adopted,” etc., “ and now in force in this state be and the same are hereby repealed.” What laws were then in force? *As well those for the repeal of which, provision had previously been made during the same session, as any others which have been overlooked. The binding force and efficacy of all these it was enacted should cease on the first day of June then next. But all “suits or prosecutions ” under such laws, then pending, should be prosecuted to final “judgment and execution,” in the same manner as if the laws had not been repealed. This a]i< *463 pears to me to have been the intention of the legislature, and, by giving this construction to their legislation, it will be found that there is less ground for complaint respecting it than has heretofore been thought.
"What laws were then in force, under which it might be reason.able to conclude suits or prosecutions, giving to these words their natural and obvious meaning, would be depending on the first day of June? The first law in the statute book (vol. 3, p. 1), is “an act respecting crimes and punishments.” This law repeals an act with the samé title, published at Marietta, September 6, 1788, and an act supplementary thereto, passed at Cincinnati, June 22,1791. It might be possible that on the first day of June there would be prosecutions depending under these laws, but still no provision is made in-this act that they shall be carried on to final judgment and execution. If we consider the saving clause of the #general repealing law as applicable to this statute, these prosecutions would be continued, otherwise they must cease and be determined. The act above referred to did not take effect until the 1st of August; the previous statutes upon the subject were, in virtue of the statute of the 22d of February, repealed on the 1st of June, and the state was left without any law for the punishment of crimes for the space of two months, to wit, from June 1 to August 1,1805. Those who were then acquainted with the state will recollect well the circumstances, and that it was in consequence of the construction given by the courts of that day to this general repealing law. That construction was, that this law repealed the previous territorial statutes upon the subject of the punishment of crimes,*on the 1st of June, although that repeal was provided for expressly in another statute, which did not take effect until the 1st of August.
*These were not the only statutes which were repealed by their titles during the session of 1804-5, and under which suits or prosecutions, as generally undei’stood, might have been depending, and which could not be prosecuted to final judgment and execution but for this general saving clause. I refer to the following, “ an act for the assignment of bail bonds,” of January 22, 1802; an “act regulating gristmills and millers,” passed December 2, 1799, an “act regulating divorce,” passed July 15, 1795. It is needless to name more.
Counsel for the defendant seem extremely anxious to attach *464 this saving clause to the repeal of the law of 1795. So far'as it can be done, and still give to language its ordinary sense and meaning, I am willing to do it. But I have shown that there wore many other pre-existing territorial statutes, which were repealed and by their title too, under which suits and prosecutions might have been pending, and which must have been discontinued but for this proviso, and even under the law .of 1795, bonds-were required to be taken of the administrator. These bonds-might have been in suit, and under this proviso such suit might be prosecuted to final judgment. It is not to be supposed that the legislature had in view the law of 1795 any more than any other law. They were framing a system. And if in some respects it was defective, there is nothing extraordinary in the circumstance. It would be a dangerous course to pursue, in giving a-construction to their acts, to go upon the hypothesis that this case now before the court was intended to be provided for especially; or to suppose that construction to be controlled in any measure by its peculiar circumstances. The proper inquiry is, what is the law ? When that is ascertained apply it to the case before the court. It is a dangerous course, first to form an opinion upon a case, and then strive to give a construction which will sustain that opinion. There is much plausibility and ingenuity in the argument of counsel upon this point, but I must think it is somewhat deceptive.
In order to show that this order is embraced within the phrases “suit and prosecution,” counsel have gone into a critical examination of the meaning of the word “ suit.” But *the proper-manner of collecting the meaning in any particular case is to look at the connection in which it is used. As to the general signification in the common acceptation of the term, it has reference to-those proceedings by which an individual attempts, in a judicial court, to obtain redress for a civil injury. It applies to civil, as prosecutions do to criminal cases. The final end of such suit or prosecution is a judgment which may be enforced by execution. This being the common acceptation of the term, is there anything in the act of February 22, 1805, which should induce us to attach to it a different signification. The languagews, “nothing in this act contained shall be so construed as to affect, in any manner, any suit or prosecution now depending and undetermined, but the same shall be carried on to final judgment and execution, agreeably *465 to the provisions of any of the said laws,” etc. It was a “suit or prosecution,” then, which could be carried into “judgment,” and such a judgment as could be enforced by “ execution” that the .legislature had in view. The language is too clear to admit of a doubt. And it can not be successfully contended that the order of May, 1804, was of that description. If not, it is not within this, saving clause.
Upon the whole, a majority of the court are of opinion that the evidence was properly rejected. The motion for a new trial will, therefore, be overruled.
Judge Collet dissented.